# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Bell v. Hutsell*, 2011 IL 110724

---

| | |
|---|---|
| Caption in Supreme Court: | JANET BELL, Indiv. and as Special Adm'r of the Estate of Daniel Bell, Appellee, v. JEFFREY HUTSELL *et al.*, Appellants. |
| Docket No. | 110724 |
| Filed | May 19, 2011 |
| Rehearing denied | September 26, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendants owed plaintiff's minor decedent no duty to prohibit his voluntary possession or consumption of alcohol at a teen party held on defendants' property where, contrary to their instructions to their son, alcoholic beverages allegedly were served, but defendants otherwise took no actions pursuant to their verbalized intent, there was no voluntary undertaking sufficient to impose liability under sections 323 through 324A of the Restatement (Second) of Torts. |
| Decision Under Review | Appeal from the Appellate Court for the Second District, reported at 402 Ill. App. 3d 654; heard in that court on appeal from the Circuit Court of Lake County, the Hon. David M. Hall, Judge, presiding. |
| Judgment | Appellate court judgment reversed in part. |

| Counsel on Appeal | John W. Patton, Jr., Dale L. Schlafer, Jessica K.T. Ohlson, David F. Ryan and David W. Lewarchik, of Patton & Ryan LLC, of Chicago, for appellants. |
|---|---|
| | Jeffrey S. Deutschman, of Chicago, for appellee. |
| | C. William Busse, Jr., and Christopher D. Willis, of Busse, Busse & Grasse, PC, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel. |
| | Francis K. Tennant, of Wolf & Tennant, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |
| Justices | JUSTICE KARMEIER delivered the judgment of the court, with opinion. Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff, Janet Bell, individually and as special administrator of the estate of her son, Daniel Bell, filed an action in the circuit court of Lake County seeking damages from the defendants, Jeffrey and Sara Hutsell, as a result of Daniel's death. Daniel died in an automobile accident after allegedly consuming alcoholic beverages at defendants' residence. Ultimately, defendants filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) and plaintiff's second amended complaint (hereafter, complaint) was dismissed, with prejudice, in its entirety. Plaintiff appealed the dismissal of six counts of her nine-count complaint. The appellate court upheld the dismissal of counts IV through VI of plaintiff's complaint, but reversed and remanded as to counts I through III, which were based on a theory of voluntary undertaking. 402 Ill. App. 3d 654. We granted defendants leave to appeal pursuant to Supreme Court Rule 315(a) (Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010)), and now reverse the judgment of the appellate court as to counts I through III.

¶ 2                              BACKGROUND
¶ 3    This case arises out of the death of Daniel Bell, age 18, who died in a single-car accident after he had allegedly consumed alcoholic beverages at the residence of defendants in the course of a party organized and hosted by the defendants' son, Jonathan. Plaintiff's second amended complaint implicitly acknowledges that the defendants did not provide alcohol for

-2-

underage consumption, and in fact alleges that defendants informed Jonathan both that alcohol consumption would not be tolerated and that they would monitor the party to see that underage partygoers did not possess or imbibe alcoholic beverages. Plaintiff alleges, however, that the Hutsells were aware of underage consumption on their premises at prior parties; that their son, Jonathan, had previously pled guilty to underage consumption; that alcohol *was* brought to the party in question and underage guests drank, excessively, with the Hutsells' knowledge–in some instances in their presence–without objection or consequence; and that Jerry Hutsell "on multiple occasions spoke to a number of underage partygoers who had been drinking alcohol and requested that if they had been drinking at the party not to drive a vehicle when leaving." The complaint states that Daniel Bell drank alcohol "in full and open view of the defendants,"and that he later walked to his car, "began driving," and "crashed his car into a tree," resulting in his death.

¶ 4        With respect to plaintiff's theory of a voluntary undertaking, advanced in counts I through III of the complaint, it was alleged generally, without additional factual reference, that defendants "voluntarily undertook the duty" to prohibit underage drinking and possession of alcoholic beverages on their premises and to inspect, monitor, and supervise partygoers under the age of 21 to those ends.

¶ 5        The complaint then recites various respects in which defendants were "negligent," most of which mirror the general allegations of the complaint, without additional factual elaboration, with the exception of a statement in paragraph 50(I) of the complaint, which includes an allegation that defendants were negligent in "failing to comply with their own verbal directions to the party guests to ensure that underage drinking *and driving* thereafter from their home not occur." (Emphasis added.) Language with respect to the preclusion of driving after the party does not appear in any statements attributed to defendants when the alleged voluntary undertaking was communicated to their son. If the allegation is a reference to the complaint's recitation that Jerry Hutsell "on multiple occasions spoke to a number of underage partygoers who had been drinking alcohol and requested that if they had been drinking at the party not to drive a vehicle when leaving," then it inappropriately equates a "request" with "verbal directions" aimed at ensuring compliance.

¶ 6        Defendants moved to dismiss the complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2006)). Pertinent to this appeal, defendants moved to dismiss counts I, II, and III, the voluntary undertaking counts, on the basis that defendants owed Daniel no duty because there is no social host liability in Illinois and the voluntary undertaking theory was simply a way of trying to circumvent the rule against social host liability. The trial court granted the motion to dismiss with prejudice, dismissing plaintiff's nine-count complaint in its entirety. With respect to counts I through III, the court stated:

"As to Counts I, II, and III, which alleges [*sic*] a voluntary undertaking, the court is familiar with [*Wakulich v. Mraz*, 203 Ill. 2d 223 (2003)], the new allegations that have been added to this Second Amended Complaint do not bring it under the rule as stated in *Wakulich*. The new allegations don't support a finding that the defendant owed any duty to the plaintiff that was breached under a voluntary undertaking."

Plaintiff filed a timely appeal challenging the dismissal of the first six counts of her

complaint.

¶ 7 The appellate court affirmed the judgment of the circuit court as to counts IV through VI of the complaint, but reversed the dismissal of counts I though III. With respect to the latter, the appellate court first acknowledged the applicability of section 323 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 323 (1965)), which addresses an undertaking voluntarily assumed for the protection of another and the bases for liability attendant to such an undertaking. The court then discussed, principally, our decisions in *Charles v. Seigfried*, 165 Ill. 2d 482 (1995) (no social host liability in Illinois based on provision of alcohol), and *Wakulich v. Mraz*, 203 Ill. 2d 223 (2003) (recognizing liability of hosts on a theory of voluntary undertaking where defendants allegedly exerted control over a helpless, inebriated 16-year-old to her detriment) and concluded on these facts:

> "The instant complaint alleged something different from the direct or indirect giving, selling, or delivery of alcohol. It alleged that defendants voluntarily undertook the duty to prevent the consumption of alcohol on their premises and that they negligently performed that duty. Because defendants did not supply the alcohol, store the alcohol, or affirmatively permit its consumption, they were not social hosts. Defendants repeat the rationale for the rule against social host liability, that it is 'the drinking of the intoxicant, not the furnishing of it, [that] is the proximate cause of the intoxication and the resulting injury.' *Charles*, 165 Ill. 2d at 486. Defendants did not furnish the alcohol, and we offer no opinion on whether the complaint adequately pleaded all of the elements of a voluntary undertaking. Accordingly, the trial court erred in dismissing counts I, II, and III of the complaint." 402 Ill. App. 3d at 662.

The appellate court remanded for further proceedings on counts I through III.

¶ 8                                    ANALYSIS

¶ 9 A motion to dismiss, pursuant to section 2-615 of the Code, challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). We review *de novo* an order granting a section 2-615 motion. *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97 (2004). We construe the allegations in the complaint in the light most favorable to the plaintiff (*King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12 (2005)); however, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action (*Marshall*, 222 Ill. 2d at 429-30).

¶ 10 Plaintiff in this case alleges that defendants voluntarily undertook the duty to prevent the underage consumption of alcoholic beverages on their premises and that they negligently performed that duty.

¶ 11 In order to prevail in an action for negligence, the plaintiff must prove that the defendant owed a duty, that the defendant breached that duty, and that defendant's breach was the proximate cause of injury to the plaintiff. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). Unless a duty is owed, there can be no recovery in tort for negligence.

*American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992); *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 208 (1979). Whether a duty exists is a question of law for the court to decide via *de novo* review. *Krywin*, 238 Ill. 2d at 226.

¶ 12 Under a voluntary undertaking theory of liability, the duty of care to be imposed upon a defendant is limited to the extent of the undertaking. *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992); *Pippin*, 78 Ill. 2d at 210. The theory is narrowly construed. *Frye*, 153 Ill. 2d at 33. We have looked to the Restatement (Second) of Torts (Restatement (Second) of Torts §§ 323 through 324A (1965)) in defining the parameters of liability pursuant to this theory. See *Wakulich*, 203 Ill. 2d at 242-46; *Frye*, 153 Ill. 2d at 32; *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 415-19 (1991); *Pippin*, 78 Ill. 2d at 210-11.

¶ 13 The relevant sections of the Restatement, as identified by the plaintiff, provide as follow:

"§ 323. Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

"§ 324A. Liability to Third Person for Negligent Performance of Undertaking

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance on the other or the third person upon the undertaking." Restatement (Second) of Torts §§ 323, 324A (1965).

¶ 14 Plaintiff contends that section 323 or 324A of the Restatement could reasonably apply to these facts. Plaintiff argues that the allegations of her complaint, "[r]easonably construed, *** show that defendants did not only voluntary [*sic*] undertake to monitor, inspect and supervise their son, but also the party guests, including Daniel. Daniel and other party guests were 'another' within the meaning of Section 323." Alternatively, plaintiff submits: "[I]f the undertaking was to render services to their son as defendants argue, defendants should have recognized that the undertaking was necessary for the protection of third persons, the party guests, including Daniel."

¶ 15 As for defendants, two of their four arguments appear to be mere variations of their principal argument below, *i.e.*, that plaintiff's voluntary undertaking theory is simply a way to circumvent the rule against social host liability set forth in *Charles v. Seigfried*, 165 Ill. 2d 482, 491 (1995) ("Legislative preemption in the field of alcohol-related liability extends to social hosts who provide alcoholic beverages to another person, whether that person be

an adult, an underage person, or a minor."). Additionally, defendants contend that plaintiff has failed to allege the requisites for liability based on voluntary undertaking, and that the failure of the appellate court to "hold that a cause of action for voluntary undertaking was stated invalidates its opinion."

¶ 16    Plaintiff responds that defendants raise several issues for the first time in this court, among them: "that plaintiff has failed to allege a number of matters which are purportedly necessary to state a cause of action based on a voluntary undertaking"; and that "the alleged injuries were proximately caused by Daniel's voluntary intoxication." Plaintiff contends that defendants have forfeited those arguments.

¶ 17    We acknowledge–and reject–defendants' persistent argument that plaintiff's attempt to state a cause of action based on a voluntary undertaking is foreclosed by the rule against social host liability. It is clear enough, from even a casual reading of this court's decision in *Wakulich*, that such a contention is meritless. In *Wakulich*, the plaintiff alleged that a pair of brothers, social hosts, provided alcohol to the plaintiff's 16-year-old daughter, Elizabeth, who became intoxicated as a result and lost consciousness. She began "vomiting profusely and making gurgling sounds." *Wakulich*, 203 Ill. 2d at 227. The hosts removed her soiled blouse and provided a pillow under her head to prevent aspiration, but they did not drive her home or contact her parents, and they prevented others at the home from calling 911 or seeking medical attention. Elizabeth died the following day, after the brothers' father allegedly ordered them to remove her from the house. *Wakulich*, 203 Ill. 2d at 227. In *Wakulich*, this court made clear that the defendants' liability, if any, was not contingent upon their status as social hosts: "Indeed, it is irrelevant for purposes of plaintiff's voluntary undertaking counts ***." *Wakulich*, 203 Ill. 2d at 242. The court specifically rejected the argument that "plaintiff's voluntary undertaking theory [was] simply an attempt to circumvent the rule against social host liability set forth in *Charles*." *Wakulich*, 203 Ill. 2d at 241-42.

¶ 18    What the court found significant in *Wakulich* were allegations that defendants, after Elizabeth had lost consciousness and become helpless, had "placed [Elizabeth] in the family room; checked on her periodically; took measures to prevent aspiration; removed her soiled blouse; and prevented other persons present in the home from intervening in Elizabeth's behalf." *Wakulich*, 203 Ill. 2d at 243. What was critical to this court's disposition in *Wakulich* were allegations that "defendants effectively took complete and exclusive charge of Elizabeth's care after she became unconscious." *Wakulich*, 203 Ill. 2d at 243. In *Wakulich*, this court agreed with the "general proposition" that "where *** a host merely permits an intoxicated guest to 'sleep it off' on the host's floor, the host does not thereby assume an open-ended duty to care for the guest and assess the guest's medical condition" (*Wakulich*, 203 Ill. 2d at 243); however, the court found that defendants had done more, assuming a duty to the helpless Elizabeth, pursuant to section 324 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 324 (1965)), by their affirmative actions, taking "complete and exclusive charge of [her] care after she became unconscious." *Wakulich*, 203 Ill. 2d at 243.

¶ 19    Turning to this case, we note that the circuit court's comments in rendering its ruling on counts I through III of the complaint evince an understanding that the principles applicable

-6-

to voluntary undertakings, as discussed in *Wakulich*, controlled the result here and that the factual allegations of plaintiff's complaint had to establish a duty that would support a cause of action based on voluntary undertaking. The court obviously found they did not.

¶ 20    Plaintiff cites *Marshall* in support of her forfeiture argument. Unlike *Marshall*, where lack of proximate cause was not a matter addressed or encompassed in the circuit court's dismissal of the complaint, and where this court thus found that issue was "not properly presented by the record" (*Marshall*, 222 Ill. 2d at 430-31), the circuit court's ruling in this case took into account and specifically addressed both this court's decision in *Wakulich* and the issue of duty. In *Wakulich*, the defendants–like the defendants in this case–had moved to dismiss "principally argu[ing] that under this court's decision in *Charles*, there is no common law social host liability in Illinois." *Wakulich*, 203 Ill. 2d at 227. As previously noted, this court rejected that argument, and then went on to discuss factors bearing upon both duty and liability for purposes of plaintiff's voluntary undertaking theory. See *Wakulich*, 203 Ill. 2d at 243-46.

¶ 21    Given the circuit court's consideration, in this case, of the elements underpinning this court's decision in *Wakulich*, and the circuit court's specific reference to duty in its ruling, we believe, as defendants suggest, that the principle acknowledged in *Marshall* and *In re R.L.S.*, 218 Ill. 2d 428, 437 (2006), applies here: "It is well settled that where the appellate court reverses the judgment of the circuit court, and the appellee in that court brings the case before this court as an appellant, that party may raise any issues properly presented by the record to sustain the judgment of the circuit court." *Marshall*, 222 Ill. 2d at 430-31 (citing *R.L.S.*, 218 Ill. 2d at 437). We will therefore consider whether the facts alleged by the plaintiff in her complaint could, pursuant to a voluntary undertaking theory founded upon sections 323 or 324A of the Restatement, support a duty and/or liability on the part of the defendants with respect to people to whom no statements of intent were even communicated and with respect to whom no affirmative action appears to have been taken.

¶ 22    According to plaintiff's complaint, on the date of the party the defendants "voluntarily undertook a duty to prohibit their son and his party guests who were under the age of 21 from drinking alcoholic beverages of any kind at their residence" and to that end also undertook to "monitor and supervise *** to ensure that none of the party guests who were under the age of 21 would consume alcoholic beverages." The complaint recites that the alleged undertaking was communicated to defendants' son Jonathan, but there is no claim that the defendants' intent was communicated to anyone else. It is alleged that defendants were present, at times, in the portion of their residence where the party was ongoing, and where plaintiff alleges that underage consumption of alcohol was obviously taking place, that defendants witnessed underage possession and consumption of alcohol; yet, they took no actions to prohibit it in furtherance of the aim of their alleged undertaking.

¶ 23    " 'By undertaking to act' " a defendant becomes " 'subject to a duty with respect to the manner of performance.' " *Wakulich*, 203 Ill. 2d at 242 (quoting *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 85 (1964)). Although the cited sections of the Restatement do not address a situation like this, where there is a narrowly disseminated statement of intent to engage in a course of conduct, the aim of which might be as much the protection of the defendants' perceived legal interests, as the physical welfare of others who are guests on the

-7-

premises, comments to section 323 of the Restatement (Second) of Torts do address circumstances under which a mere promise, without entering upon performance, might qualify as a sufficient undertaking within the rule stated in that section. Comment a to section 323 references comment d thereof. See Restatement (Second) of Torts § 323, cmt. a, at 136 (1965). There, the distinction between "misfeasance" (negligent performance of a voluntary undertaking, as alleged in *Wakulich*) and "nonfeasance" (omission to perform a voluntary undertaking) is discussed as it pertains to tort liability. The commentators observe that the "modern law has *** witnessed a considerable weakening and blurring of the distinction, *in situations where the plaintiff's reliance upon the defendant's promise has resulted in harm to him*." (Emphasis added.) Restatement (Second) of Torts § 323, cmt. d, at 138 (1965). Decisions of our appellate court have also underscored the necessity of reliance if a defendant is to be held responsible for nonfeasance: " 'Under Illinois law, a plaintiff's reliance on the defendant's promise is an independent, essential element in cases of nonfeasance.' " *Buerkett v. Illinois Power Co.*, 384 Ill. App. 3d 418, 428 (2008) (quoting *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 997 (2005)); see also *Lewis v. Chica Trucking, Inc.*, 409 Ill. App. 3d 240 (2011).

¶ 24    The alleged recipient's change of position, or lack thereof, may also be a factor affecting duty and liability when an actor terminates services voluntarily undertaken. Comment c of section 323 addresses an actor's ability to terminate services voluntarily undertaken:

> "The fact that the actor gratuitously starts in to aid another does not necessarily require him to continue his services. He is not required to continue them indefinitely, or even until he has done everything in his power to aid and protect the other. The actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him." Restatement (Second) of Torts § 323, cmt. c, at 137 (1965).

¶ 25    With these principles in mind, we first look to the factual allegations of plaintiff's complaint to ascertain the scope of the duty plaintiff may reasonably claim defendants intended to undertake, and to determine whether performance was commenced.

¶ 26    The facts alleged by plaintiff in this case suggest that defendants expressed an intention to prohibit underage possession and consumption of alcoholic beverages at the party hosted by their son at their residence. Although plaintiff states that *monitoring* the possession and consumption of alcohol at the party was part of the *duty* voluntarily undertaken by defendants, monitoring alone obviously did nothing to ensure "the protection of the other's person," or "the protection of a third person," pursuant to the requisites of sections 323 and 324A of the Restatement. Restatement (Second) of Torts §§ 323, 324A (1965). Monitoring was not, as in some of the cases cited by the plaintiff, the duty itself. Given the facts alleged by plaintiff, it was not even a substantial step in the undertaking. Plaintiff alleges that defendants were aware of underage drinking, and took no action.[1] Given these facts, for there

---

[1]We note, plaintiff's complaint contains summary allegations that defendants were "negligent" in inspecting and monitoring the activities on the premises; however, the factual recitations of plaintiff's complaint would actually refute that allegation as plaintiff repeatedly states

-8-

to be a substantial step in pursuit of the alleged undertaking, there must have been some affirmative action taken in an attempt to *prohibit* possession and consumption of alcohol, the ultimate objective of the undertaking. No affirmative action is alleged here. Defendants did not attempt to confiscate alcoholic beverages in the possession of underage partygoers; they did not ask offenders to leave; they did not call a halt to the party–they did nothing. In our view, the facts alleged do not support an inference that defendants commenced substantive performance of their intended undertaking; however, even if we were to assume, *arguendo*, such an inference could be reasonably drawn, the alleged circumstances indicate the intent to perform was abandoned.

¶ 27 Moreover, even if we were to find sufficient allegations of a duty voluntarily assumed, pursuant to which performance was commenced, the facts alleged do not provide a basis for liability. The factual allegations of plaintiff's complaint do not support an inference that defendants' stated intent and subsequent inaction increased the risk of harm to Daniel or other partygoers (see Restatement (Second) of Torts §§ 323(a), 324A(a) (1965)), nor does it evince reliance or change of position on the basis of defendants' expressed intent. According to the facts set forth in plaintiff's complaint, defendants' intention to prohibit underage possession and consumption of alcoholic beverages was expressed only to their son, Jonathan. There is no allegation that Jonathan communicated defendants' intention to anyone else. Thus, there are no facts alleged in the complaint that would support an inference of reliance or change of position on the part of any guests attending the party or, for that matter, any "other" person owing them some unarticulated, undefined duty. See Restatement (Second) of Torts § 324A(b), cmt. d, at 143 (1965) (addressing a situation where the actor "has undertaken a duty which the other owes to the third person"). Plaintiff's undeveloped suggestion that Jonathan might be the "other" for purposes of section 324(b) liability fails to account for the fact that the extent of Jonathan's innate liability to the guests–having undertaken no additional duty–is no greater than any other host in this situation. He owed Daniel no duty to prevent Daniel's possession or consumption of alcohol.

¶ 28 Because defendants in this case took no affirmative acts to effect the aim of their expressed intention, *i.e.*, prohibition, and no one changed position as a result of their statement, relied upon it, or was put at "increase[d] *** risk of *** harm" or "in a worse position" because of it (see Restatement (Second) of Torts § 323 (1965)), the factual allegations of this case do not support a basis for finding a duty undertaken or liability for violation of any such duty. Indeed, under these circumstances, it would be illogical, and unsound policy, to hold that defendants could be liable: illogical, because defendants' failure to act on their stated intention did not in any way affect the events as they would have unfolded had the intent to act not been verbalized; unsound policy, because the imposition of a duty and liability in this situation would only serve as a deterrent to those who would consider volunteering assistance to others, in effect punishing people for thinking out loud. At most, the allegations of plaintiff's complaint suggest that defendants failed to follow

---

in her complaint that defendants *witnessed* and *were aware of* underage possession and consumption of alcoholic beverages on the premises.

through on an expressed intent to act that *might* have protected Daniel–who was legally underage for the consumption of alcohol, but an adult for most other purposes–against his own volitional acts, or that defendants simply abandoned their original undertaking, whether it was intended for their own protection from the perceived potential of liability, or a genuine concern for the safety of Daniel and other partygoers. We conclude the allegations of plaintiff's complaint are insufficient to state a legal duty and a basis for liability on the part of defendants under either section 323 or 324A of the Restatement.

¶ 29 We note that the facts alleged in this case bear little similarity to those this court addressed in *Wakulich* and *Simmons v. Homatas*, 236 Ill. 2d 459 (2010) (employees of club ejected highly intoxicated individual, placed him in his vehicle, and directed him to drive away), both of which were discussed in the parties' briefs to a greater or lesser extent for diverse reasons. In those cases, this court applied Restatement principles, as we have done here. However, in each of those cases defendants' affirmative conduct, amounting to an assertion of control over an inebriated and significantly impaired person, increased the risk of harm to that person and/or created a risk of harm to others. Thus, different considerations applied. Here, where defendants owed Daniel no duty to prohibit his voluntary possession or consumption of alcohol, and took no action to do so pursuant to their verbalized intent, which was communicated only to their son, we have a case of true nonfeasance. We think the facts and analysis of this case point up the continuing significance of a distinction between misfeasance and nonfeasance.

¶ 30 For the reasons stated, we reverse that part of the appellate court's judgment that reversed the circuit court's dismissal of counts I through III of plaintiff's second amended complaint.

¶ 31 Appellate court judgment reversed in part.